IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIA C. STALLWORTH,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-0393 |
| | : | |
| MILAN LASER<br>CORPORATION LLC,<br>    Defendant. | :<br>:<br>: | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                         **APRIL 28, 2025**

Nia C. Stallworth has filed a *pro se* civil action alleging that her former employer Milan Laser Corporation LLC ("Milan") terminated and then failed to re-hire her in violation of various provisions of federal employment discrimination law. Currently before the Court are Stallworth's Amended Complaint, Motion to Proceed *In Forma Pauperis*, and Motion to Appoint Counsel. For the following reasons, the Court will grant Stallworth leave to proceed *in forma pauperis*, dismiss her Amended Complaint with leave to amend, and deny the Motion to Appoint Counsel without prejudice.

**I.      FACTUAL ALLEGATIONS**[1]

Stallworth alleges that she is over 40 years old, "androgynous/female," and "Black presenting." (Am. Compl. at 4; ECF No. 7-1 at 1.) She does not indicate when she began working for Milan or in what capacity, but she asserts that she was terminated by Milan's Regional Director, Cathy Barber, on March 15, 2024. (ECF No. 7-1 at 1.) She claims that in the months leading up to her termination she endured discriminatory treatment from two of her

---

[1] The facts set forth in this Memorandum are taken from Stallworth's Amended Complaint (ECF Nos. 7, 7-1). The Court adopts the pagination assigned by the CM/ECF docketing system.

colleagues, Clinic Manager Alexa Leon and Clinic Assistant Zoe Satterthwaite. (*Id.*) She alleges that Leon "photoshopped the curls and fly aways out of [Stallworth's] hair for a company photo" that was added to Milan's website. (*Id.*) Stallworth states the photo was "used without [her] consent to promote 'inclusivity' for African American customers," and that Leon refused to remove the photo from the website until after Stallworth's termination. (*Id.*) Stallworth asserts that Satterthwaite "never wanted to clean the bathroom, so [Stallworth] was forced to clean it for [her] patients," and that Leon "would invite strangers into the clinic and direct them to the bathroom [that Stallworth] had just cleaned." (*Id.*) Stallworth asserts that "they treated [her] like this because [she] was Black presenting." (*Id.*) She also alleges that Leon made inappropriate remarks about her "sexual exploits" at work on one occasion, and on another occasion Satterthwaite "stated that she didn't know [Stallworth] was 'that old' and laughed." (*Id.*)

Stallworth alleges that on February 15, 2024, she received an "acknowledgment of disability from human resources." (*Id.*) The next day, Leon asked her to provide further proof of her disability, yet she was "denied time off to visit a physician to get a note." (*Id.*) She claims that on March 1, 2024, she was "only given half a day off of work," despite having "plenty of PTO time available," which resulted in her not having sufficient time to go to the doctor. (*Id.*) She asserts that Leon told Barber that "perhaps [Stallworth] was late because of [her] children." (*Id.*) She alleges that when she corrected Leon on the point, she "was called angry and told [she] was getting an attitude." (*Id.*) She further claims that on March 1, 2024, Barber accused her of using "anti-gay speech in the lobby," that she then denied ever having done so, and that Barber never mentioned it again. (*Id.*) Stallworth states that after March 1, "the workplace became very hostile," she was "denied time for lunch breaks," and that Leon and Satterthwaite "would start acting funny toward [her]" if she took "any kind of break or [sat] down." (*Id.*)

2

Stallworth claims that Barber's "actions were extreme" in terminating her on March 15, 2024. (*Id.*) She claims to have had a follow-up "survey" with Laura Tatten, a human resources representative, on March 28, 2024, where Stallworth reported that "corporate always redirected [her] back to those [she was] attempting to whistleblow on," but that Tatten ignored those concerns. (*Id.*) Finally, she claims that on May 23, 2024, she "re-applied for this provider LPN position" at another Milan location also managed by Barber, that Milan received her application and cover letter, but that she never received a response. (*Id.*)

Stallworth asserts claims based on various federal employment statutes. (Am. Compl. at 3.) She states that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") on January 20, 2025, and with the Philadelphia Commission on Human Relations on March 4, 2025. (*Id.* at 5.) She notes that she has not received a Right to Sue Letter from the EEOC. (*Id.*) She seeks relief in the form of damages and an order directing the Defendant to re-employ her and to accommodate her disability. (Am. Compl. at 6.)

**II.     STANDARD OF REVIEW**

The Court will grant Stallworth leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory

allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Stallworth is proceeding *pro se*, the Court construes the allegations of the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).

## III. DISCUSSION

Stallworth claims violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), The Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). (Am. Compl. at 2.) She indicates that the alleged discriminatory conduct comprises her termination and failure to re-hire her, failure to accommodate her disability, failure to stop harassment, unequal terms and conditions of her employment, and sexual harassment. (*Id.* at 3-4.)

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112). To state a plausible employment discrimination claim, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the elements of the causes of action under the relevant statute. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (noting that, although a plaintiff need not establish a *prima facie* case to survive dismissal for failure to state a claim, she still must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" (quotations omitted)).

A plaintiff may state a Title VII claim by pleading facts to support (1) that the plaintiff is a member of a protected class, (2) that the plaintiff was qualified for the position the plaintiff held or sought, (3) that the plaintiff suffered an adverse employment action, and (4) that the

circumstances of the adverse employment action give rise to an inference of discrimination. *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007); *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 (3d Cir. 1998). Similarly, a plaintiff may allege an ADEA claim by pleading facts to support that: "(1) [she] is at least forty years old; (2) [she] suffered an adverse employment decision; (3) [she] was qualified for the position in question; and (4) [she] was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."[2] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)). To state a claim under the ADA, a plaintiff must allege that she has a disability within the meaning of the ADA,[3] she was "'otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer[;]' and she 'suffered an otherwise adverse employment decision as a result of discrimination.'" *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 221 (3d Cir. Sept. 4, 2024) (quoting *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020)). Claims under the PHRA are interpreted coextensively with their federal counterparts. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

To plead a plausible hostile-work-environment claim, a plaintiff must allege that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that was

---

[2] "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Willis*, 808 F.3d at 644 (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)).

[3] A person is disabled within the meaning of the ADA if they: (1) have "'a physical or mental impairment that substantially limits one or more' of their 'major life activities'; (2) have 'a record of such an impairment'; or (3) are 'regarded as having such an impairment.'" *Morgan*, 114 F.4th at 221 (quoting 42 U.S.C. § 12102(1)).

sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment," and that the "discrimination [was] because of the employee's protected status or activity." *Culler v. Sec'y of U.S. Veterans Affs.*, 507 F. App'x 246, 249 (3d Cir. 2012) (cleaned up) (first quoting *Nat'l. R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116 (2002), then quoting *Andreoli v. Gates,* 482 F.3d 641, 643 (3d Cir. 2007)).  For a hostile work environment in the context of sexual harassment, a plaintiff must allege facts sufficient to show that "(1) the employee suffered intentional discrimination because of [his or her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) (citation omitted).  To support *respondeat superior* liability, a plaintiff must allege that her employer knew or should have known about the harassment and failed to take prompt remedial action.  *See Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 105 (3d Cir. 2009) (citation omitted).

      Stallworth addresses certain elements of her claims by asserting that she belongs to multiple protected classes based on her race, age, gender, and disability.  Milan's decision to terminate and not re-hire her when she applied for another position would qualify as adverse employment actions.  However, Stallworth fails to state a discrimination claim because she does not sufficiently connect her membership in any protected class to those adverse employment actions.  *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799 (3d Cir. 2003) (explaining that, for statutory screening, a plaintiff must allege "some causal nexus between [her] membership in a protected class" and the adverse employment action).  Stallworth merely asserts in conclusory fashion that actions taken against her were discriminatory, but that is insufficient.  *See Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As to Stallworth's allegations about her hair being photoshopped by Leon and her photo being used to promote racial diversity without her permission, the Court recognizes "that racial discrimination claims by Black women on the basis of their hair texture or natural hairstyles are viable, and have been for a long time." *Haymon v. Metra*, No. 18-cv-848, 2020 WL 1548953, at *12 (N.D. Ill. Mar. 31, 2020) (citing *Jenkins v. Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164, 168 (7th Cir. 1976)).  However, in order to state a claim to relief, a plaintiff must plead facts to suggest "more than isolated and unpleasant incidents (as opposed to such pervasive or abusive behavior that the very conditions of [the plaintiff]'s employment were altered)." *Id.* (citation omitted); *see also Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *3 (3d Cir. Nov. 13, 2023) ("The question of whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (cleaned up)).  The same is true as to the alleged isolated comments by Leon about her sex life and by Satterthwaite about Stallworth's age.  *See Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) ("Title VII imposes no general civility code," as it "does not reach the ordinary tribulations of the workplace, for example, sporadic use of abusive language or generally boorish conduct." (internal quotation marks omitted)).  Moreover, "[t]he basis of an employer's liability for hostile environment

7

sexual harassment depends on whether the harasser is the victim's supervisor or merely a coworker." *Huston*, 568 F.3d at 104 (citation omitted). Although Stallworth states that Leon's title was "Clinic Manager," it is not apparent from her factual allegations whether Leon was her supervisor or co-worker.

As to her claim of disability discrimination, she merely states that she had a disability (without indicating what that disability is), and that there was some dispute over her proof of the disability and her ability to take time off of work to secure such proof. Those allegations alone are not sufficient to suggest that discovery will reveal evidence that any adverse employment decision was connected to her purported disability. Stallworth also has not stated a claim that Milan failed to accommodate her disability, because her factual allegations do not address how she could have been reasonably accommodated and whether she requested that accommodation. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010) (explaining that the elements of such a claim are: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." (cleaned up)).

Stallworth also has failed to state a claim under a retaliation theory, because she does not allege that she complained of discriminatory conduct prior to her termination. A plaintiff seeking to state a claim for retaliation under the federal employment statutes must allege that: (1) she engaged in conduct protected by federal employment discrimination law; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). A general complaint about unfair treatment does not constitute protected

activity; a plaintiff must show that she complained specifically about unlawful discrimination. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).  Stallworth alleges that, after her termination, she spoke to a human resources representative and told her that she had previously tried to "whistleblow," but does not offer any details of her prior complaints.  (ECF No. 7-1 at 1.) She asserts that she asked Leon not to use the photoshopped image because it "made the photo look strange," but does not indicate that she ever complained to Leon or anyone else that the use of her photo was discriminatory.  (*Id.*)  Stallworth's Amended Complaint does not include any allegations that she engaged in protected conduct, and therefore does not state a retaliation claim.

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Stallworth's Amended Complaint for failure to state a claim.  However, the Court will permit Stallworth the opportunity to file a second amended complaint.[4]  An appropriate Order with additional information about filing a second amended complaint will be entered separately.[5]

BY THE COURT:

/s/ Chad F. Kenney

_____
**CHAD F. KENNEY, J.**

---

[4] The Court notes Stallworth's assertion that she has not received a right-to-sue letter from the EEOC.  Stallworth should be mindful of the administrative exhaustion requirement in drafting any second amended complaint.  *See Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358 (3d Cir. 1984) (finding the exhaustion requirement was satisfied by the EEOC's issuing a right-to-sue letter that "was not issued until after the complaint was filed"); *Tlush v. Mfrs. Resource Ctr.*, 315 F. Supp. 2d 650, 654 (E.D. Pa. 2002) ("While the attainment of a right-to-sue letter from the EEOC is a condition precedent to filing Title VII and ADA suits, the failure to obtain notice of the right to sue is a curable defect.").

[5] The Court will deny Stallworth's Motion to Appoint Counsel (ECF No. 8) without prejudice to reassertion after the Court conducts statutory screening of any second amended complaint that Stallworth may file.  *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (holding that whether the plaintiff's claim has "some merit in fact and law" is a threshold question in appointing counsel).