IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIA C. STALLWORTH, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| MILAN LASER CORPORATION LLC, | : | No. 25-cv-0393 |
| *Defendant.* | : | |

## MEMORANDUM

KENNEY, J.                                                   September 12, 2025

Defendant Milan Laser Corporation LLC moves to dismiss Plaintiff's Second Amended Complaint. For the reasons set forth below, the Motion (ECF No. 21) will be **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

### A.  Factual Background

The following facts are drawn from the Second Amended Complaint and are accepted as true at motion-to-dismiss stage. *See U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). Plaintiff identifies as a "Black/African American woman" who experiences "anxiety, depression, arthritis, and fatigue." ECF No. 18 at 3. On December 11, 2023, she began working as a Provider Nurse for Defendant. *See id.* at 4.

Plaintiff states that she experienced discrimination on the basis of race, sex, and disability during her employment with Defendant. She alleges that, "[t]hroughout her employment [she] was subjected to disparate treatment, including being forced to clean bathrooms while white employees were not required to do so," "denied lunch breaks" and subjected "to false accusations about tardiness and children." *Id.* at 5. She also alleges that on February 7, 2024, "[her] natural hair as a Black woman" was photoshopped in a company photo by a clinic manager without her consent.

*See id.* Also in February 2024, according to Plaintiff, the clinic manager "made inappropriate sexual comments about her personal life and 'cam while gaming,'" and Plaintiff was denied "time off to obtain a doctor's note" by Defendant's Human Resources Department. *Id.* Plaintiff further alleges that on March 1, 2024, "Defendant denied [her] a full day off for a doctor's appointment," though she had available paid time off, and that on March 4, 2024, "during a staff meeting, [her] sexual orientation was inappropriately questioned." *Id.* Plaintiff also asserts that, sometime during her employment, Defendant posted "Plaintiff's private medical appointments" publicly. *Id.*[1]

At some point, Plaintiff announced her intent to resign, with a planned end date of April 10, 2024. *See id.* at 6. On March 15, 2024, Defendant's Regional Director Cathy Barber terminated Plaintiff, "before her planned resignation date." *Id.* at 6, 9. After Plaintiff was terminated, Defendant continued to use Plaintiff's image on its website. *Id.* at 6.

On March 28, 2024, Plaintiff participated in an exit interview conducted by Defendant's Human Resources Department. *Id.* During the exit interview, Plaintiff alleges to have "detailed the discriminatory treatment she had experienced." *Id.*

Later, on May 23, 2024, Plaintiff applied for a position at another one of Defendant's locations. *See id.* at 6, 9. Plaintiff never received a response to her application. *Id.* at 6.

**B.  Procedural History**

On January 22, 2025, Plaintiff, proceeding *pro se*, initiated this lawsuit against Defendant by filing on this Court's docket an Equal Employment Opportunity Commission form. *See* ECF No. 1 at 1–9. At the Court's direction, *see* ECF No. 3 at 2, Plaintiff filed an Amended Complaint against Defendant on March 10, 2025, asserting claims for race, color, religion, national origin,

---

[1] Plaintiff also briefly alleges that she was discriminated against on the basis of age and experienced "age-related discriminatory comments." ECF No. 18 at 5. However, Plaintiff does not bring claims for age discrimination in any of her counts. *See id.* at 6–10.

age, and gender and sex discrimination, *see* ECF No. 7 at 4. Plaintiff also moved for leave to proceed in forma pauperis, ECF No. 6 at 1–5, and for appointment of counsel, ECF No. 8 at 1.

On April 28, 2025, the Court granted Plaintiff's Motion to Proceed in Forma Pauperis, denied her Motion for Appointment of Counsel, and sua sponte dismissed the Amended Complaint without prejudice for failure to state a claim. *See* ECF No. 11 at 1–3; ECF No. 10 at 1–9; *see also* 28 U.S.C. § 1915(e)(2)(B)(ii).

Counsel subsequently entered an appearance on behalf of Plaintiff, ECF No. 17 at 1, and Plaintiff filed a Second Amended Complaint on May 29, 2025, ECF No. 18 at 1–11. The Second Amended Complaint brought claims for (1) race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (2) sexual harassment and discrimination under Title VII, (3) disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (4) race, sex, and disability discrimination under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 *et seq.*, and (5) retaliation under Title VII and the Pennsylvania Human Relations Act. *See* ECF No. 18 at 6–9.

On June 10, 2025, Defendant moved to dismiss the Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), *see* ECF No. 21 at 1–16, and Defendant's Motion is now before this Court.

## II.    **<u>LEGAL STANDARD</u>**

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a complaint states a claim, the Court must accept "all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge*

*Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). Those allegations do not need to render the plaintiff's claim probable, but there must be more than a "possibility that a defendant has acted unlawfully." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

## III.   DISCUSSION

Plaintiff brings claims under Title VII for discrimination on the basis of sex and race, and for retaliation. *See* ECF No. 18 at 6–7, 9. She also brings disability discrimination claims under the Americans with Disabilities Act ("ADA"). *See id.* at 8. Lastly, she brings race, sex, disability, and retaliation claims under the Pennsylvania Human Relations Act. *See id.* at 9.

Plaintiff states a claim for racial discrimination under Title VII but otherwise fails to state claims under Title VII and the ADA. And because Plaintiff has not exhausted her claims under the Pennsylvania Human Relations Act, those claims must also be dismissed.

### A.  Title VII Claims

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against its employees on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In this case, Plaintiff brings discrimination and hostile work environment claims under Title VII on the basis of sex and race. *See* ECF No. 18 at 6–8.

To make out a prima facie case of discrimination under Title VII, a plaintiff must demonstrate that "(1) she is a member of a protected class; (2) she was qualified for the position;" (3) she experienced "an adverse employment action;" and (4) her employer took the adverse action "under circumstances that give rise to an inference of unlawful discrimination." *See Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 31 (3d Cir. 2014). To establish a hostile work environment, a plaintiff must show "(1) [s]he suffered intentional discrimination because of her protected activity; (2) the

discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." *Komis v. Sec'y of the U.S. Dep't of Lab.*, 918 F.3d 289, 293 (3d Cir. 2019) (citation omitted).

Though a plaintiff is not required to establish a prima facie case at the motion-to-dismiss stage, the Complaint's allegations must "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the claim. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (alteration in original) (citation omitted). With these principles in mind, the Court turns to Plaintiff's sex and race discrimination claims.

### 1. *Sex Discrimination*

Plaintiff fails to state a claim for sex discrimination under Title VII. First, Plaintiff's sex discrimination claim does not "raise a reasonable expectation that discovery will reveal evidence" of each element of the prima facie case. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (citation omitted). In particular, even if Plaintiff satisfies the other elements of sex discrimination, the Complaint's sparse allegations do not create a reasonable expectation that discovery will produce evidence of the fourth element: that any adverse employment action occurred under circumstances of "unlawful discrimination." *Twillie*, 575 F. App'x at 31. That element requires Plaintiff to demonstrate that "her protected status was a factor in the employer's challenged action." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016).

The Complaint contains two allegations regarding sex. First, Plaintiff alleges that on February 14, 2024, a clinic manager "made inappropriate sexual comments about her personal life and 'cam while gaming' to Plaintiff." ECF No. 18 at 5. Second, Plaintiff alleges that on March 4, 2024 "during a staff meeting, Plaintiff's sexual orientation was inappropriately questioned." *Id.*

These two individual incidents are insufficient to create a reasonable expectation that discovery will produce evidence that Plaintiff's sex or sexual orientation "was a factor" in Plaintiff's termination, Defendant's failure to rehire her at another location, or any other adverse employment action. *See Connelly*, 809 F.3d at 788. The Complaint makes no connection between these incidents and Plaintiff's termination. *See* ECF No. 18 at 5. Indeed, the single incident in which the clinic manager commented "about her personal life" and "cam while gaming" occurred nearly one month before Plaintiff was terminated. *See id.* at 5–6. And though Plaintiff alleges her sexual orientation was questioned, the Complaint lacks any allegations about the identity of the individuals who questioned her sexual orientation or whether they had authority to terminate her, rehire her, or assess her performance. *See id.* at 5.

Without a single allegation plausibly connecting these two incidents to Plaintiff's termination or failure to be rehired, the Complaint does not plead a sex discrimination claim under Title VII. *Waleyko v. Phelan*, 146 F.4th 89, 96 (1st Cir. 2025) (affirming dismissal of Title VII sex discrimination claims where the plaintiff's "allegations tying the [employer's] actions to his sex [we]re wholly of the speculative variety" and the plaintiff failed to "plausibly indicate a causal nexus between his sex and termination"). The two isolated incidents—a clinic manager making inappropriate sexual comments on one day and Plaintiff's sexual orientation being questioned on another—do not "plausibly connect [Plaintiff's sex] to [her] discharge," failure to rehire, or any other adverse employment action."[2] *Santos v. Iron Mountain Film & Sound*, 593 F. App'x 117,

---

[2] To the extent that constructive discharge could be an adverse employment action in this case, Plaintiff does not plead a theory of constructive discharge in her Complaint. However, for the reasons discussed above, the couple of incidents identified by Plaintiff, while inappropriate and unprofessional, do not plausibly rise to the level at which "a reasonable person in [the plaintiff's] position would have felt compelled to resign," as required for constructive discharge. *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 705 n.36 (E.D. Pa. 2016). Plaintiff's alleged adverse employment actions are discussed more thoroughly *infra* Section III.A.2.

119 (3d Cir. 2014) (affirming dismissal of Title VII national origin claim where the plaintiff made only the "naked assertion that he was discharged because he is Honduran").

Plaintiff also fails to state a hostile work environment claim based on sex. For a hostile work environment claim, including one premised on sexual harassment, a plaintiff's allegations must plausibly show that her place of employment was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [the] employment and create an abusive working environment." *Culler v. Sec'y of U.S. Veterans Affs.*, 507 F. App'x 246, 249 (3d Cir. 2012) (citation omitted); *see also Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (applying hostile work environment framework to sexual harassment claim).

The above two incidents fail to plausibly show that Plaintiff's workplace was permeated with pervasive or severe intimidation, ridicule, and insult. Though as alleged, Plaintiff was twice the subject of inappropriate comments and questioning, these one-off incidents do not amount to pervasive hostility. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (Title VII does not create a "general civility code"). And while those comments were unprofessional and unwelcome, they do not rise to the level of hostility required for "severe" discrimination. *See Castleberry v. STI Grp.*, 863 F.3d 259, 265 (3d Cir. 2017) (reversing dismissal of hostile work environment claim where "supervisor used a racially charged slur . . . accompanied by threats of termination"); *Malin v. Orleans Par. Commc'ns Dist.*, 718 F. App'x 264, 273 (5th Cir. 2018) (co-worker "recount[ing] details of her sex life" to the plaintiff on four occasions was not "so severe" or pervasive to plausibly amount to a hostile work environment). Because the two incidents alleged in the Complaint were not pervasive or so extreme as to rise to the level of severe "intimidation,

ridicule, and insult," *Culler*, 507 F. App'x at 249, Plaintiff fails to state a hostile work environment claim based on sex.

### 2. *Race Discrimination*

Next, Plaintiff alleges she was discriminated against and subject to a hostile work environment because of her race. *See* ECF No. 18 at 7. Plaintiff plausibly states a race discrimination claim under Title VII but not a hostile work environment claim.

Turning first to Plaintiff's discrimination claim, Plaintiff plausibly satisfies the first two elements of a discrimination claim because she alleges that she is "Black/African American," is "qualified for her position as Provider Nurse," and had "performed her job duties satisfactorily." *Id.* at 6. Discovery may also reveal evidence of the third element, an adverse employment action. To satisfy that standard, an employee must show only "some harm" or "'disadvantageous' change" with respect to "an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 347 (2024) (citation omitted). Most relevant here, discovery could reasonably show that being required to clean bathrooms constitutes an adverse employment action because, drawing all reasonable inferences in Plaintiff's favor, it amounts to a less advantageous task that white employees were not required to take on. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015) (being required to take on an excessive workload compared to non-Hispanic teachers plausibly constituted an adverse employment action at the pleadings stage).[3]

---

[3] Plaintiff also asserts two other potential adverse employment actions: that she was terminated after she announced her resignation but before her planned resignation date, and that Defendant failed to rehire her at another location. *See* ECF No. 18 at 5–6, 9. This Circuit does not appear to have decided whether an "early" termination, after a plaintiff has announced an intent to resign, can constitute an adverse employment action. However, district courts have reached conflicting conclusions on similar issues. *Compare Rojas v. GMD Airlines Servs., Inc.*, 254 F. Supp. 3d 281, 301 (D.P.R. 2015) ("The First Circuit has held that once an employee has tendered his resignation . . . and the employer later ends the employment relationship, the employee cannot transform an otherwise voluntary resignation into a termination."), *and Salen v. Blackburn Bldg. Servs., LLC*,

Finally, taking Plaintiff's allegations to be true, discovery may reasonably reveal that an adverse employment action was taken against Plaintiff "under circumstances that give rise to an inference of unlawful discrimination." *See Twillie*, 575 F. App'x at 31. In particular, Plaintiff alleges that she, as a Black employee, was "forced to clean bathrooms" throughout her employment "while white employees were not required to do so." ECF No. 18 at 5. In doing so, according to the Complaint, Plaintiff was required to take on different, less advantageous job duties than her white coworkers.

This, in connection with Plaintiff's other allegation—that the Clinic Manager photoshopped "Plaintiff's natural hair as a Black woman" without Plaintiff's consent—is enough to reasonably suggest that discovery may produce evidence of disparate treatment and discrimination. *See Bryant v. Pepco*, 730 F. Supp. 2d 25, 30 (D.D.C. 2010) (denying motion to

---

No. 3:14-CV-01361, 2017 WL 71708, at *15 (D. Conn. Jan. 6, 2017) ("While a defendant's termination of an employee would constitute an 'adverse employment action,' a defendant's termination of an employee who has resigned does not."), *with U.S. Equal Emp. Opportunity Comm'n v. Chipotle Servs., LLC*, No. CV 23-2439, 2024 WL 4948888, at *12–13 (D. Kan. Dec. 3, 2024) (concluding that there was a dispute of fact about whether the plaintiff suffered an adverse employment action where the defendant did not assign the plaintiff work shifts in the period between when the plaintiff gave notice to resign and the plaintiff's last day). This issue is further complicated by the Supreme Court's 2024 decision in *Muldrow*, which "lower[ed] the bar" for what amounts to an adverse employment action. *Muldrow*, 601 U.S. at 356 n.2. Regardless, even if an early termination constituted an adverse employment action, Plaintiff fails to plausibly allege any connection between the incidents she identifies and her termination after announcing her resignation. *Santos*, 593 F. App'x at 119 (at the pleadings stage, a plaintiff must "plausibly connect" discrimination to an adverse employment action).

With respect to a failure to rehire, a failure to renew an employment arrangement "can constitute an adverse employment action" regardless of whether the employment arrangement is "at-will or for a limited period of time." *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 320 (3d Cir. 2008). However, even to the extent that case law regarding renewal of employment contracts applies, as with the above, the Complaint contains no allegations plausibly connecting Defendant's failure to hire Plaintiff at another location with the alleged incidents. *See Santos*, 593 F. App'x at 119.

dismiss a race discrimination claim where the plaintiff alleged "(1) that his duties were given to a white Lead, (2) that he was demoted because of his race, and (3) that white Leads were allowed to choose their own on-call assignments while African American Leads were not"). While "few in number," her allegations provide the sufficient "factual support necessary at this early pleading stage" to give Defendant notice of her claims. *Id.* And though Plaintiff does not name the specific white employees who were not required to clean bathrooms, that "degree of detail . . . is not necessary" at the motion-to-dismiss stage. *Ghawanmeh v. Islamic Saudi Acad.*, 672 F. Supp. 2d 3, 16 (D.D.C. 2009) (though the plaintiff did not "name the persons" she alleged were treated differently, her allegations sufficed to "give notice to defendant that [she was] asserting that she was treated differently from Saudis and men who applied for . . . leave"); *Connelly*, 809 F.3d at 791 (a plaintiff is not required, at the pleadings stage, to make out a prima facie case of disparate treatment or identify the theory of disparate treatment—mixed-motive or pretext—under which she is proceeding).[4]

Defendant disputes Plaintiff's account of the facts and argues, for example, that Plaintiff was not forced to clean bathrooms. *See* ECF No. 21 at 11. However, at the pleadings stage, this Court must accept the allegations in the Complaint as true. *See City of Cambridge Ret. Sys.*, 908 F.3d at 878. And "[t]he proper place to resolve factual disputes" like the ones raised by Defendant "is not on a motion to dismiss, but on a motion for summary judgment." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Plaintiff's allegations create a reasonable expectation that

---

[4] While this Court dismissed sua sponte the race discrimination claim contained in Plaintiff's *pro se* First Amended Complaint, Plaintiff's Second Amended Complaint differs meaningfully in its factual allegations. For example, unlike the First Amended Complaint, which briefly references one person not cleaning bathrooms, *see* ECF No. 7-1 at 1, the Second Amended Complaint states that white employees were not required to clean bathrooms, *see* ECF No. 18 at 5.

discovery could reveal evidence of racial discrimination and disparate treatment. That suffices at this stage. *See Martinez*, 986 F.3d at 266.

However, Plaintiff fails to state a hostile work environment claim based on race. "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel*, 706 F.3d at 168 (citing *Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 23 (1993)). And the focus of a hostile work environment claim is the "work atmosphere as a whole." *See West v. Phila. Elec. Co.*, 45 F.3d 744, 756 (3d Cir. 1995).

Being required to clean the bathrooms while white employees were not and having her hair photoshopped in one instance without her consent, while plausibly supporting a racial discrimination claim, do not—without additional factual allegations—show that the work atmosphere as a whole was permeated by "intimidation, ridicule, and insult."[5] *Culler*, 507 F. App'x at 249. While these incidents are offensive, they are not "physically threatening." *Mandel*, 706 F.3d at 168. And while Plaintiff asserts she was required to clean bathrooms "[t]hroughout her employment," without any allegations at all about Plaintiff's work duties or the nature of the employment, it is not clear that this conduct is so extreme as to be "humiliating" or interfere[] with [Plaintiff's] work performance." *Id.* Ultimately, without additional allegations, this conduct does not appear to have "contaminate[d] the workplace" as a whole with abuse. *See Castleberry*, 863 F.3d at 264 (citation omitted); *cf. Qin v. Vertex, Inc.*, 100 F.4th 458, 471 (3d Cir. 2024) (affirming grant of summary judgment to defendant on hostile work environment claim where workplace

---

[5] Plaintiff also alleges that she was "denied lunch breaks" and subjected "to false accusations about tardiness and children" but her Complaint does not contain any factual allegations tying these acts to her race or any other protected characteristic. *See* ECF No. 18 at 5.

remarks, though offensive, did not "inject[] hostility and abuse into the working environment" or rise to the level of, for example, using "an unambiguous racial epithet" (citation omitted)). Plaintiff therefore fails to state a hostile work environment claim based on race.

### 3. *Retaliation*

Plaintiff also brings retaliation claims under Title VII. *See* ECF No. 18 at 9–10. She alleges that because she "complain[ed] about discriminatory treatment," she was terminated "before her planned resignation date," was not considered for rehire at another of Defendant's locations, and her "photoshopped image" was kept on the company website. *Id.* at 9. To establish retaliation under Title VII, a plaintiff "must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action" *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). Here, all but one of Plaintiff's sparse allegations about engaging in a protected activity are conclusory, and none of her allegations plausibly connect her protected activity with an adverse employment action.

Plaintiff alleges twice that she "complain[ed] about discriminatory treatment," *see* ECF No. 18 at 6, 9. But these allegations lack any information at all about when the complaints were made, to whom, or what instances of discrimination were complained of. *Cf. Pattanayak v. Mastercard Inc.*, No. 22-1411, 2023 WL 2358826, at *1 n.2 (2d Cir. Mar. 6, 2023) ("To oppose an unlawful employment practice, a plaintiff must do more than make a 'generalized' complaint; rather, the plaintiff must complain in a manner so that her employer 'reasonably . . . understood that she was complaining of conduct prohibited by Title VII.'" (alteration in original) (citation omitted)). The Complaint also alleges that after Plaintiff was terminated, she "participated in an exit interview" in which she "detailed the discriminatory treatment she had experienced." ECF No.

18 at 6. However, because her exit interview occurred after she was terminated, her complaints during the exit interview could not have caused her termination. *See Carvalho-Grevious*, 851 F.3d at 257.

Plaintiff also fails to allege a causal connection between the exit survey and Defendant's failure to rehire her. Except for the sole allegation that Plaintiff applied for a position at another location "but received no response," ECF No. 18 at 6, the Complaint lacks any factual allegations regarding the failure to rehire—let alone allegations reasonably suggesting a connection between the exit survey at one of Defendant's locations and the failure to hire her at another. *Cf. Ting v. Adams & Assocs.*, 823 F. App'x 519, 522 (9th Cir. 2020) (where complaint "failed to allege any underlying facts" to support connection between the plaintiff's absences and a failure to rehire her, district court properly dismissed disability discrimination claim), Furthermore, nearly two months elapsed between the exit interview and Plaintiff applying to Defendant's other location. *See* ECF No. 18 at 6 (exit survey occurred on March 28, 2024, and Plaintiff applied to another one of Defendant's locations on May 23, 2024); *Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) ("[A] temporal proximity greater than ten days requires supplementary evidence of retaliatory motive."). And while "the passage of time does not necessarily bar a plaintiff's retaliation claim," it may create a need for "*additional* [indicia]" of a retaliatory motive. *Piercy v. Maketa*, 480 F.3d 1192, 1198–99 (10th Cir. 2007); *see Blakney*, 559 F. App'x at 186–87 (affirming dismissal of retaliation claims under Title VII and state law, including because the plaintiff failed to plausibly plead a connection between complaints and the failure to rehire). No such indicia are alleged here.

Lastly, Plaintiff asserts that after she complained of discrimination, Defendant retaliated against her by keeping her "image on its website." ECF No. 18 at 6. However, because this was

not a disadvantageous change to "an identifiable term or condition of [Plaintiff's] employment," *see Muldrow*, 601 U.S. at 347, maintaining Plaintiff's photograph on the website after she was terminated is not an adverse employment action.

### B. ADA Claim

Next, Plaintiff bring a disability discrimination claim under the ADA. ECF No. 18 at 8. To state a claim under the ADA, the Complaint must allege that the plaintiff (1) "is a disabled person within the meaning of the ADA," (2) "is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations," (3) and has experienced an "adverse employment decision as a result of discrimination." *Eshleman v. Patrick Indus.*, 961 F.3d 242, 245 (3d Cir. 2020). With respect to the third element, adverse employment decisions stemming from discrimination "encompass[] not only adverse actions motivated by prejudice and fear of disabilities," but also the "fail[ure] to make reasonable accommodations for a plaintiff's disabilities." *Haberle v. Troxell*, 885 F.3d 171, 180 (3d Cir. 2018) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

Plaintiff adequately alleges the first and second elements—that she was disabled under the ADA and was qualified to perform her job. *See Eshleman*, 961 F.3d at 245. She alleges she suffered from "anxiety, depression, arthritis, and fatigue," which "substantially limit[ed] one or more major life activities," and of which Defendant was aware. ECF No. 18 at 8; *see Williams v. Sec'y Pa. Dep't of Corr.*, 117 F.4th 503, 527 (3d Cir. 2024) (mental health conditions, like physical impairments, can qualify as disabilities under the ADA); *Valle-Arce v. P.R. Ports Auth.*, 651 F.3d 190, 196 (1st Cir. 2011) (treating chronic fatigue as a disability under the ADA). Under the notice pleading standard, Plaintiff is not obligated "to go into particulars about the life activity affected by her alleged disability" in her Complaint, though she would ultimately have to prove that her

14

conditions substantially limited a major life activity to prevail on her claim. *Cf. Fowler*, 578 F.3d at 213 (denying motion to dismiss claim brought under the Rehabilitation Act of 1973); *see also EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) ("[S]o long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading."). Likewise, she adequately alleges the second element of an ADA claim by stating that she "was qualified for her position as Provider Nurse and performed her job duties satisfactorily." ECF No. 18 at 6.

However, Plaintiff's allegations do not plausibly show that she suffered an "adverse employment decision as a result of discrimination." *Eshleman*, 961 F.3d at 245. Plaintiff alleges three facts as evidence of discrimination. First, she alleges that in February 2024, she was denied time off to obtain a doctor's note. ECF No. 18 at 5. Second, she states that in March 2024, though she had available paid time off, Defendant denied her request for "a full day off for a doctor's appointment." *Id.* Third, she alleges that someone at work publicly posted her private medical appointments. *Id.*

Plaintiff does not plausibly connect the above facts to an adverse employment action. She alleges no facts plausibly demonstrating that she was terminated, after announcing she was resigning, as a result of disability discrimination. *See* ECF No. 18 at 8 (making only a conclusory allegation that "Defendant discriminated against Plaintiff because of her disabilities by . . . ultimately terminating her employment"). And Plaintiff makes no allegations at all connecting Defendant's failure to rehire her at another location to her disability status.[6] *See* ECF No. 18 at 6.

---

[6] In any case, Plaintiff does not assert this as one of the adverse employment actions she experienced due to disability discrimination; she only asserts a failure to rehire with respect to her retaliation cause of action. *See* ECF No. 18 at 9.

Similarly, Plaintiff does not plausibly allege that Defendant failed to reasonably accommodate her disabilities. *See Haberle*, 885 F.3d at 180. Except for alleging that Plaintiff sought a doctor's note in February 2024, the Complaint contains no information about the purpose or nature of the above medical appointments. *See* ECF No. 18 at 5. Critically, the Complaint does not even allege whether these appointments were related to Plaintiff's disabilities. *See id.* What is more, the Complaint lacks any allegations about how these appointments would accommodate "[Plaintiff's] work ability" or how her disabling conditions "impacted her ability to perform the essential functions of her job." *See Andrews v. Highmark Health*, No. 2:22-CV-917, 2022 WL 14672734, at *7 (W.D. Pa. Oct. 25, 2022) (dismissing a disability discrimination claim under the ADA and other statutes, including on these grounds).

Without any allegations at all connecting Plaintiff's doctor's appointments to her disabilities or connecting her disabilities to her ability to work, the Complaint does not state a claim for disability discrimination or a failure to accommodate. It is certainly conceivable that Plaintiff experienced a lack of reasonable accommodation, or another adverse employment action, because she was disabled. But the Complaint as it stands fails to "nudge [Plaintiff's] claim[] across the line from conceivable to plausible," as it must at the motion-to-dismiss stage. *Saliba v. Att'y Gen. of U.S.*, 828 F.3d 182, 195 (3d Cir. 2016) (second alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Because the Complaint fails to state an ADA claim, the Court need not reach Defendant's argument that Plaintiff's allegations are contradicted by documents outside the pleadings. *See* ECF No. 21 at 14–15.

16

### C.  Pennsylvania Human Relations Act Claims

Lastly, Plaintiff brings race, sex, and disability discrimination claims, as well as a retaliation claim, under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.* However, these claims must be dismissed because Plaintiff failed to exhaust them.

"To bring suit under the PHRA, an administrative complaint must first be filed with the [Pennsylvania Human Relations Commission] within 180 days of the alleged act of discrimination." *Mandel*, 706 F.3d at 164. Once a plaintiff files an administrative complaint with the Commission, the plaintiff cannot file suit for one year, which affords the agency time "to investigate and, if possible, conciliate the matter." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001).

Here, Plaintiff filed an administrative charge with the Pennsylvania Human Relations Commission on March 4, 2025, less than one year before filing her Complaint. ECF No. 18 at 3. Because a year has not passed since Plaintiff filed her administrative charge, she is barred from bringing her PHRA claims at this time. And, after Defendant raised this argument in its Motion to Dismiss, Plaintiff did not dispute that her PHRA claims had not yet been exhausted. *See* ECF No. 23-1 at 9. The Court will therefore dismiss Plaintiff's PHRA claims without prejudice.[7]

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss (ECF No. 21) will be **GRANTED** in part and **DENIED** in part. The Court will deny the Motion with respect to Plaintiff's race discrimination claim under Title VII. The Motion will otherwise be granted, and the applicable claims will be dismissed without prejudice. An appropriate Order will follow.

---

[7] Additionally, it appears that Plaintiff's administrative charge was not filed with the PHRA within 180 days of "the alleged act[s] of discrimination." *Mandel*, 706 F.3d at 164. However, Defendant does not raise this issue, and it is therefore waived. *See* 43 Pa. C.S. § 962(e).

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**